UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA JEAN ANDREASEN,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.

_____/

Civil Action No. 16-11526
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

# REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 13, 16]

Plaintiff Sandra Andreasen appeals a final decision of defendant Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the Court **RECOMMENDS** that:

- Andreasen's motion [ECF No. 13] be **GRANTED**;
- the Commissioner's motion [ECF No. 16] be **DENIED**; and
- this matter be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Andreasen's Background and Claimed Disabilities

Born July 27, 1951, Andreasen was 61 years old when she submitted her applications for disability benefits on March 25, 2013. [ECF No. 11-5, Tr. 90-98]. She has some college education, and past relevant work as a medical transcriptionist. [ECF No. 11-2, Tr. 35-36; ECF No. 11-6, Tr. 123-25]. Andreasen alleged that she is disabled by encephalopathy and lower back pain, as well as high blood pressure, depression, a history of silent stroke, right knee pain, hydrocephalus, and hearing loss, with an onset date of February 21, 2013. [ECF No. 11-3, Tr. 55; ECF No. 11-2, Tr. 39-46; ECF No. 11-7, Tr. 242-47]. For DIB purposes, her date late insured was June 1, 2017. [ECF No. 11-2, Tr. 9].

After a hearing on September 9, 2014, during which Andreasen and a vocational expert (VE) testified, the ALJ found that Andreasen was not disabled. [ECF No. 11-2, Tr. 16, 31-54]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-3]. Andreasen timely filed for judicial review. [ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Andreasen was not disabled. At step one, she found that Andreasen had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, Tr. 11]. At step two, she found that Andreasen had the severe impairments of "history of hydrocephalus[2] with decreased balance; arthritis of the right knee; degenerative disc disease with lower back pain; chronic headaches; hearing loss." [*Id.*]. At step three, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 13].

Between the third and fourth steps, the ALJ found that Andreasen had the RFC to perform the full range of sedentary work.[3] [*Id.*]. At step

---

[2] "Hydrocephalus is the buildup of fluid in the cavities (ventricles) deep within the brain. The excess fluid increases the size of the ventricles and puts pressure on the brain." http://www.mayoclinic.org/diseases-conditions/hydrocephalus/basics/definition/con-20030706 (last visited June 23, 2017)

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required

4

four, she found that Andreasen could perform her past relevant work as a transcriptionist, and was thus not disabled. [*Id.*, Tr. 16].

## II.  STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an

---

occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

5

"adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Andreasen argues that the ALJ failed to account for all of her mental and physical impairments in the RFC, and that the ALJ's credibility determination was not supported by substantial evidence. The Court agrees that the credibility determination was flawed, which calls into doubt the conclusion that she could perform her past work as a transcriptionist, so remand for reconsideration of the ALJ's decision is warranted.

## III. ANALYSIS

### A.

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of her credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th

6

Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Here, the Court finds that the ALJ's explanation of her credibility determination was in important respects inconsistent with the record and requires speculation as to her reasoning.

Regarding Andreasen's credibility, the ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." [ECF No. 11-2, Tr. 14]. In support, the ALJ reasoned that there was no "particular medical treatment" sought on or near the alleged onset date of disability, February 21, 2013, which she found "incongruous with allegations of debilitating symptoms since that date." [*Id.*]. But Andreasen sought treatment from her treating physician, Angela Hamlin, D.O., on February 11, 2013, complaining that working caused her too much pain and that she could not tolerate full time work due to issues with her head and the ringing in her ears. [ECF No. 11-7, Tr. 167]. She also complained of back and leg pain, leg weakness, and mild incontinence. [*Id.*]. She then testified at the hearing that she last worked in February 2013, which is

7

consistent with Dr. Hamlin's medical record stating that Andreasen "stopped working 2/2013 after she was here." [*Id.*, Tr. 208]. Thus, the alleged onset date does correlate with her medical treatment with Dr. Hamlin; the ALJ's reasoning that Andreasen did not seek medical attention near her onset date is plainly inconsistent with the record.

The ALJ also found that Andreasen's gaps of treatment did not reflect that of a totally disabled individual. [ECF No. 11-2, Tr. 14]. The ALJ acknowledged that Andreasen "alleged difficulties due to lack of insurance," but stated that Andreasen did not seek out low-cost or free treatment. [*Id.*]. The Commissioner correctly notes that a lack of treatment is a proper consideration for the ALJ's credibility determination, citing *Lee v. Comm'r of the Soc. Sec. Admin.*, No. 14-CV-11292, 2015 WL 4394275, at *13 (E.D. Mich. July 16, 2015). And while the inability to afford treatment is a factor to be used when weighing a claimant's credibility, "it is not the only factor to be considered." *Id.*

However, Andreasen *did* regularly seek assistance from her treating physician Angela Hamlin, D.O., mostly over the phone but also in person, while she was uninsured in 2012 and 2013. [ECF No. 11-7, Tr. 167-71, 206-09]. During that period, she received narcotic medications, flexeril and steroids for her back pain. [*Id.*, Tr. 169, 206]. She reported that she had

8

used heat and rest but "now stops working if it comes on" and that she takes one or two ibuprofen and half of a "pain pill" in order to "sit and do transcription," and she later said that her body was "not letting her work very much – too much pain." [*Id.*, Tr. 167, 169]. Andreasen also attributed her inability to work to her "head"; there was too much pressure and her ears were ringing. [*Id.*, Tr. 167, 207-08]. She complained of leg pain and weakness. [*Id.*. Tr. 167]. In February 2013, Dr. Hamlin wrote that, without insurance, she was unable to order much testing and make many referrals, and that Andreasen was going to pursue Medicaid or other coverage. [*Id.*].

Andreasen followed through and obtained insurance effective January 1, 2014, [*id.*, Tr. 205], after which she saw various doctors on a much more frequent basis. [*See id.*, Tr. 189-90, 205-06, 221-39, 242-47]. She had assessments for her back pain, an audiologic assessment for her hearing issues, a carotid Doppler exam for hypertension and history of silent stroke, and an eye exam at that time, along with several office visits to physicians and a request for a CT head scan due to her hydrocephalus. [*Id.*]. So the ALJ's suggestion that Andreasen was not really seeking treatment is inconsistent with the record. She sought treatment for the ailments she claims are disabling prior to obtaining insurance, and then secured insurance to improve her treatment.

Of further import, *Lee* suggests that a lack of treatment should be considered as casting doubt on a claimant's credibility only when combined with other factors. *Lee*, 2015 WL 4394275 at *13-*14. Here, many of the other factors cited by the ALJ fail to support her determination. This includes the ALJ's accusation that Andreasen was making an excuse to not have her pain investigated in February 2014. [ECF No. 11-2, Tr. 15]. A note in Andreasen's medical record indicates that a physician's assistant "[l]et her know Dr. Hamlin is concerned about how much Vicodin she needs and wants to know if she can get this pain investigated since she has insurance now. The pt said yes she can but it's a slow process because she does not have a car." [ECF No. 11-7, Tr. 204]. The ALJ wrote that Andreasen's response that she did not have a car "questionable" and an excuse "suggestive that the symptoms were not as severe or debilitating as alleged." [ECF No. 11-2, Tr. 15]. But it is far from inherently incredible that the lack of a car would slow Andreasen's ability to seek medical attention, especially given her arthritis in the right knee and degenerative disc disease, and the ALJ's assessed RFC limiting her to sedentary work. And the fact that Dr. Hamlin believed that Andreasen "needed" so much Vicodin is, if anything, consistent with her claims of disabling pain. *Hill v. Astrue*, No. 3:08CV00190, 2009 WL 3110365, at *13 (S.D. Ohio July 17, 2009),

10

*report and recommendation adopted in relevant part*, 2009 WL 3110364 (S.D. Ohio Sept. 23, 2009) (treatment with Oxycontin and Vicodin supported plaintiff's credibility); *Brewer v. Astrue*, No. 5:09-CV-3023, 2011 WL 1304889, at *4 (N.D. Ohio Apr. 1, 2011) (plaintiff's use of prescribed "strong narcotic pain medication" along with other treatment supported her credibility).

Andreasen saw Anupama Devara, M.D., in August 2014 due to exacerbated back pain from the physical activity of taking care of her yard. [ECF No. 11-7, Tr. 221-25]. The ALJ found that this "level of activity belies" her allegations, [ECF No. 11-2, Tr. 15], but the record provides little detail on the specifics of the activity from which to draw such a definitive conclusion. The Commissioner notes that Andreasen's yard work was not a one-time occurrence; she admitted to regularly mowing the lawn on her disability forms. But she also stated that it "takes hours," and "is done over 2-3 days with rest" and extra pain medication, [ECF No. 11-6, Tr. 133], rendering it questionable that this yard work contradicts Andreasen's allegations regarding her limitations or is "comparable to typical work activities." *Rogers*, 486 F.3d at 248. Regardless, the ALJ did not consider this evidence in his assessment, instead relying on the singular record from August 2014. The ALJ also reasoned that Andreasen's described daily

11

activities are not limited to the extent one would expect given her complaints, though she does not specify the daily activities to which she refers or which complaints are contradicted by them. [ECF No. 11-2, Tr. 15]. The Court should not be left to speculate what the ALJ meant. *Cox,* 615 F. App'x at 261.

The ALJ discounted Andreasen's credibility because there were "minimal objective findings to substantiate" her substantive complaints. [ECF No. 11-2, Tr. 14]. But as indicated in the only consultative opinion on record – and the only opinion expressly evidence considered by the ALJ – Elizabeth W. Edmond, M.D., found Andreasen to have crepitation on range of motion of the right knee with increased warmth on palpation, a larger right knee circumference than the left, and that the right knee lacked full flexion with local pain produced. [ECF No. 11-7, Tr. 176]. "Referable to heel-shin testing, she is slow doing right on left with complaint of right knee pain." [*Id.*]. And Dr. Edmond reported, "Bilateral patella [kneecap] reflexes are unobtainable," which was abnormal. [*Id.*, Tr. 176, 179]. She assessed Andreasen as having arthritis of the right knee with evidence of an inflammatory component. [*Id.*]. Dr. Edmond's findings about Andreasen's right knee are important because Andreasen testified that "[doing] transcription you have to put your foot up and down many, many times a

day, and that very much increased the right knee pain." [*Id.*, Tr. 41]. The ALJ provided a truncated summary of Dr. Edmond's clinical examination without any mention of the findings pertaining to Andreasen's right knee. [ECF No. 11-2, Tr. 15]. In fact, the ALJ's discussion never mentions anything about Andreasen's right knee despite finding that the arthritis in her right knee was a severe impairment. [*Id.*, Tr. 11-16].

The medical record shows that Andreasen reported during her July 2013 appointment with Dr. Hamlin that the pressure in her head and her back pain had improved since she stopped working. [*Id.*, Tr. 208]. The note stated, "Back hurts freq[uently], esp[ecially] when she was working. Has had to stop transcribing – pressure in the head and back pain has improved." [*Id.*]. The ALJ noted these improvements in credibility assessments, but did not acknowledge the improvements were attributed to the fact that Andreasen was no longer working. [*Id.*; ECF No. 11-2, Tr. 14-15].

The ALJ placed emphasis on the fact that no treating physician's opinion indicated that Andreasen was disabled or more greatly limited than her assessed RFC, and opined that "one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor." [ECF No. 11-2, Tr. 15]. But the governing regulation

indicates that medical opinions will be considered, not that they are required. 20 C.F.R. § 404.1529(c)(2) ("We also consider the medical opinions as explained in § 404.1520c."). The ALJ's indication that "one might expect" a treating physician's opinion wrongly suggests that such opinions are required.[4]

The ALJ additionally cited Andreasen's "unpersuasive appearance and demeanor" while testifying as supporting her credibility determination. [ECF No. 11-2, Tr. 15]. The Court does not take the deference due to the ALJ's credibility determination lightly, and notes that the ALJ's charge to observe and assess a "claimant's demeanor and credibility" is crucial. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (internal quotation marks and citations omitted). Still, the ALJ emphasized that her observation of Andreasen was "only one among many being relied on in reaching a conclusion" that Andreasen's allegations were not fully credible, and too many of her other reasons are inconsistent with the record, unsupported by the law, or require the Court to speculate as to their bases. The Court makes no finding that Andreasen's allegations regarding her

---

[4] The Commissioner argues that the ALJ's decision is supported by the opinions of consultative examiners, but it is not clear whether the ALJ considered those opinions, as described below, and it is clear that she did not cite those opinions as supporting her credibility determination.

14

limitations are credible, only that the ALJ should be required to reconsider her credibility determination to address the flaws in her analysis described here.

**B.**

Since the ALJ's credibility determination was flawed, her conclusion that Andreasen can return to her past relevant work as a transcriptionist should also be revisited. This is especially true because, although making a nonspecific conclusion that Andreasen was not fully credible, the ALJ did not address the specific reasons that Andreasen alleged that she "cannot handle the sitting position of transcribing." [ECF No. 11-7, Tr. 207].

In January 2014, Andreasen reported bilateral knee pain, continual headaches but with improvement since she stopped working, and "still feel[ing] like [her] head is going to burst if she uses computer or goes online or reads." [*Id.*, Tr. 206]. At the hearing, she testified that she suffered from "extreme pain" in the lower back requiring two steroid injections, "headaches, pressure, [impaired] vision," and dizziness resulting from hydrocephalus. [ECF No. 11-2, Tr. 44-45]. If these allegations of symptoms were credited, Andreasen would not be capable of even sedentary work. And even if the ALJ continues to find Andreasen not fully capable, she should enunciate with greater specificity why she has

15

determined that Andreasen is capable of the sitting, knee movement, and focus required for medical transcription despite her severe impairment of right knee arthritis and the symptoms associated with hydrocephalus.

In defense of the ALJ's position, the Commissioner relies in part on the opinions of state agency consultants B.D. Choi, M.D., and Blaine Pinaire, Ph.D., who opined on Andreasen's physical and mental impairments, respectively. [ECF No. 11-3, Tr. 55-65]. However, the ALJ did not once reference either of these opinions. The Commissioner argues that the ALJ "did say she considered *all* the opinion evidence in accordance with the rulings and regulations." [ECF No. 16, PageID 335 (emphasis added)]. But in fact the ALJ did not state that she considered "all" of the opinion evidence, only that she "has also considered opinion evidence in accordance with the requirements . . . ." [ECF No. 11-2, Tr. 13].

The Commissioner argues that, regardless, an ALJ's failure to explicitly discuss an opinion does not mean that it was not considered. In *Schanck v. Comm'r of Soc. Sec.*, No. 12-14837, 2014 WL 1304816 (E.D. Mich. Mar. 31, 2014), the court found that the ALJ's "failure to explicitly discuss" an opinion did not "mean that he did not consider it." *Schanck*, 2014 WL 1304816 at \*6. While it was not ideal that the ALJ failed to articulate his reasoning, that error was harmless at most because

16

substantial evidence supported the ALJ's decision.  *Id.*  In support, the *Schanck* court cited *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496 (6th Cir. 2006), where the ALJ "failed to explain why he favored several examining physicians' opinions over another's."  *Kornecky*, 167 F. App'x at 507.  The court found the harmless-error rule to be applicable.  *Id.*

But the Sixth Circuit has also emphasized that "[i]n reviewing an ALJ's findings and conclusions, this Court shall not accept appellate counsel's *post hoc* rationalization for agency action in lieu of accurate reasons and findings enunciated by the Board."  *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (internal quotation marks, brackets, and citation omitted).  An error is not harmless "if the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture."  *Id.* (internal quotation marks, brackets, and citation omitted).  As described above, the ALJ's credibility determination was flawed by inaccuracies and reasoning that was insufficiently articulated, and the ALJ's discussion failed to enunciate how she considered some of Andreasen's severe impairments when assessing her RFC.  The Court has substantial doubt that the ALJ would have made the ultimate finding that Andreasen could return to her

17

past work as a transcriptionist without those errors, so they are not harmless.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Andreasen's motion [ECF No. 13] be **GRANTED**; that the Commissioner's motion [ECF No. 16] be **DENIED**; and that the Commissioner's decision be **REMANDED** for further proceedings consistent with this report and recommendation.

Dated: June 26, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 26, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
